and United States Attorney for the United States Department of Justice, Leslie Hassell. Good morning, Your Honors. May it please the Court, I'm Douglas Lutter, the General Counsel of the U.S. House of Representatives. With me today is Principal Deputy General Counsel Todd Tatelman and Deputy General Counsel Megan Barbero. If you will indulge me for just 30 My opposing counsel and I, Mr. Rabb, worked together at the Justice Department for I think more than 30 years. I worked with him, supervised him, and it is such a privilege for me to share this lectern with him after all those years together. I would like to reserve five minutes for rebuttal with the Court's permission. So, we have a situation where the House has the Executive Branch is spending a vast amount of money that was never appropriated for that purpose. The House sued after engaging in all sorts of political activity. The President asked for a large amount of money to build the southern border wall. Congress said no. This eventually led to the President shutting down the United States government for the longest period in its history. There were all sorts of negotiations and eventually that shutdown was solved. Once again, the House and the Senate largely said no to what the President wanted as far as funding for the wall. This was very clear. It was very specific. It was focused on this one thing. After, in fact, the same day that the President entered into this compromise, he said, actually, I don't like the political compromise I entered into. I'm going to spend a lot more money on this wall than Congress appropriated for it. So, he set about to do that. He declared a national emergency, which was necessary for one of the sources of funds that he was going to use, and Congress disapproved that. The President vetoed that disapproval and went ahead. So, this is a situation that comes here under the Appropriations Clause, but the reason I've been going through this is an amazing amount of political effort preceded this. This is not a situation... that there are two specific political tools which you could use. One of which you haven't used, according to them, which would be to pass another bill that specifically disapproves of these tactics that the President has used to fund the wall in ways that you say violate the appropriations statute. So, they say you haven't exhausted all of your political tools because you haven't done that. What's your response? The first thing I do want to say, Your Honor, is you said the government argues. Remember, I'm here for the United States House of Representatives. We are the government, just like the Justice Department is the government. We're both the government. Your Honor, the House and the Senate said to the President, no. And then part of the compromise was the House and the Senate said, we'll give you far less than you've asked for, just a little bit. So, it's not... it's very puzzling why... Well, I don't know that that completely answers the question. I mean, the executive is saying that we are complying with these various statutes, 2808 to 284, and this is just maybe a disagreement about the scope of those statutes. And they're saying to the extent that the House disagrees with our interpretation, they can amend those statutes to say explicitly, you can't do this. And the problem here, Your Honor, is the position of the President and the Justice Department is that he can spend the money. And so, if we... if the House and the Senate pass that legislation, as it did in overriding his emergency determination, he vetoed it. So, what that means is, in essence, you're saying... they're saying, the Constitution requires that before Congress, the House, the Senate can go to court, you have to have a veto-proof majority to pass something to do exactly what you already did. You already said, I can't have this money, but I'm going to spend it anyway. In addition, Your Honor, remember, the Justice Department position here is extremely broad and absolute. And so, we can't lose sight of this. Remember, their position, and Mr. Mupon made this clear to a different panel in this court recently, according to them, Congress and or the House can never, never come to court to sue the executive branch. That brings us to a question as to whether one House or a bicameral legislature can bring something to court. Is the institution that's injured here and has to be standing, the House by itself, or should you... should it be brought by the whole... must it be brought by the whole bicameral body? And that is exactly the question, and Judge McFadden focused on that. And we believe, our position set out quite clearly is that the House can sue because the House, as an institution, can sue on its own because we know that both the House and the Senate, individually, have brought suits to enforce subpoenas. And the Supreme Court... They can be sued again if they can be able to own to the law and have the capacity to sue, but as far as standing, the injured entity has to be the suer. Is it, in fact, the House or is it the bicameral body that has the injury that would warrant standing to sue in this case? And here, it is the House because the unique situation of the Appropriations Clause, and by the way, I want to get to later, and because we have this unique situation involving the Appropriations Clause, the floodgates problem is really not a problem, but to continue answering your question, Judge Santel. So, the Appropriations Clause, as we know, was put in the As Judge Kavanaugh wrote for this court in the Department of the Navy case, no money of any kind can be spent without an appropriation for that purpose. The Appropriations Clause arose out of a compromise that was worked out in the Constitutional Convention. The framers originally had a broad origination clause that said that measures to raise money and to appropriate money could only be done, can only originate in the House. The other members of the Convention said that would disadvantage the Senate too much. We want each House of Congress to have independent, significant authority over appropriations. And so, the origination clause was changed. So, each House has a special, and when I say House here, I'm obviously meaning the House and the Senate, has a special power under the Appropriations Clause. Now, I understand the response to that is, but that's true of all legislation, because of bicameralism. But that the government can exist without virtually any other legislation. But the government can't do anything without appropriating money. So, this means that this clause gives special power to each separately, the House and the Senate, because they both know legislation must be passed. We have to pass some legislation. It's not like you could say, shall we pass the National Labor Relations Act? If one House says no, it just ends. The government goes on. In that vein, I guess, relating to both Judge Wilkins' comments about specific prohibition legislation and the nature of the Appropriations Clause, I had the thought that the point of the Appropriations Clause is there needs to be affirmative authority before the president, the executive branch, can spend. That silence is itself a form of action. It is a prohibition in the way that other legislation, normal legislation, is not. And so, requiring the House or Senate to adopt specific prohibitions changes the nature of the Appropriations Clause into a prohibition rather than an authorization. Does that also relate, then, to this point about the uniqueness of the Appropriations Clause, or maybe not? No, it absolutely does. Not surprisingly, you anticipated me. That was my next point that I was going to handle in my outline. So, yes, as we know, it has to be affirmatively authorized. And there's no inherent power... How do we know that? That was my assumption. I'm sorry? That was my assumption. Yes. Authorized by law is what the Constitution says. Is it crystal clear, then, that that means expressly authorized by law? Yes. And that the Supreme Court and this Court have said, expressly authorized. Both courts have made very clear that they will not imply that funds have been appropriated for a specific person. They have to be expressly appropriated. That's black-letter law here. So it does mean, and again, Department of the Navy case, it does mean that there's no inherent authority by the President to spend money. And, in fact, we have the famous historical example of President Lincoln spending money while Congress wasn't there yet to try to put down the insurrection in the beginning of the Civil War. And when Congress comes back, he then goes to Congress to get an appropriation. He's not... He wasn't... He was quite, obviously, quite uncomfortable with, even in that kind of emergency, the President spending any kind of money. And obviously... How does that respond to Judge Santel's concern about the fluid to the unique authority, where there has to be affirmative action by Congress before the executive can spend money, that it breaks down into a distinct, or I think you said your brief, unique interest of the House? I guess the Senate would have the same thing? Both of them have this distinct interest? Yes. Because, as we say, the history of the development of the Appropriations Clause showed that the compromise, and this was part of the broader compromise about how the Senate was going to be set up vis-à-vis the House, with the two representatives per state, as opposed to the way the House is set up, that the framers meant each House to have the individual power to block any appropriations, and thereby stop any money from being spent. And again, this is unique because the government can do nothing without the appropriation of funds. There is also... The House of Delegates there argued that they had a unique role in redistricting and passing legislation. So, several ways, Your Honor. Bethany Hill, first of all, involved... The Supreme Court went into considerable depth in There were two grounds for the House of Delegates standing there. One was the speaking for the state. That's what you're going to. That's fine. That's not an issue. Here, I wanted to focus on the second one, where they said, fine, we still have an independent interest as the House of Delegates ourselves in litigating. That's really what's relevant here. And there, that was tied to the first part, because again, the Supreme Court was clearly looking at the way the Virginia government was set up. The whole opinion is discussing that. And the Court said there was nothing specially unique to the Virginia House of Delegates within its state governmental scheme that would lead you to think that the Virginia House of Delegates had a particular institutional interest in redistricting and how redistricting would be done. Obviously, here, we're dealing with, as the Supreme Court said... The Supreme Court described their role as dominant. That is what the Virginia House of Delegates contend. The Supreme Court gave the Supreme Court's decree that they have a dominant role, a dominant initiating role in redistricting, which sounds like... But again, the Supreme Court came down with, under the Virginia, the way the Virginia government is set up... No, this was in the second... Admittedly, but I still think, at all times, the Court was talking about Virginia. And remember, it was a case involving state government, as in the Arizona case, where the Supreme Court also dealt with... I'm sorry, Aaron. I'm sorry, I wasn't intending to interrupt your answer. I was making sure I was hearing it well. Okay, I'm sorry. I did have another question, if you're close to the end of that one. And it's really not a very bright question, I guess. But I want to make sure I understand what you're asking us to do. Or, not asking us, but asking the courts to do it. We all wish to appropriately hear and say the district court can do something. What is it exactly you want them to do? I'll answer that question right now and then come back to further answer to just the last question. No, no, it's important. Your Honor, what we are asking for is both declaratory and injunctive relief. Because, as was granted originally by district court in California, and then the Ninth Circuit declined to say that. The Supreme Court then issued a stay of that injunction, because it had questions about... The injunction would say what? The executive from spending funds for building a border wall without a specific appropriation for that purpose by Congress. So, the injunction would be the funds here that have been being spent could no longer be spent under the theory that the executive is using. Again, indeed, it would be the same injunction that we heavily supported as amicus out in California. That's what you want from the district court, not from us. Oh, I'm sorry. And then we also have sought declaratory relief, but from this court... Right, because... Two things. The district court dismissed the case, so we want that to be vacated. Now, we have asked that this court address the merits, because we briefed the merits. It's a pure issue of law, and we think the court... It would be unusual, but we think the court can do that. Yes. You didn't brief the preliminary injunction factors. We did not, because, remember, the district court dismissed the case. It originally denied a preliminary injunction. Your theory is we would rule on all the merits, but not the remedy? And then send it back to the district court to decide about an injunction? You said you want us to rule on the merits, but your merits is a request for an injunction. My point is it would be a final injunction at that point. It wouldn't be preliminary anymore, so there's no reason to brief the preliminary injunction standards. So you want us to reverse the district court and enter a permanent injunction? Yes, Your Honor, because the merits here are a pure question of law. Now, the Justice Department, on its own, decided not to brief the merits, and so I think it would be appropriate if this court then said to the Justice Department, we'll give you X number of days to now submit a supplemental brief that we would then respond to. But the merits are a straight question of law here. The main thing, though, obviously is... They're a question of law, but they're complicated. Oh, they are complicated, although... Might not facts be needed as to exactly what money is being spent on? No, Your Honor. There's no need for any factual development. If they were to show that, in fact, the money that goes, the authorization to interdict drugs, drug smuggling, if they were to show that it was spent to stop drugs from coming across, as it turns out, the same thing to stop drugs, stop people, wouldn't we need fact findings on that? Absolutely not, Your Honor. Remember, there are three funds here that the government, that the Justice Department is using, that the executive is using. We're not challenging the first one, treasury forfeiture. For the second one, Section 284, the President has transferred money under Section 8005, an appropriation statute. That statute says you can't transfer money if it has been denied by Congress, which we think, we argue, and it's the courts in California that accept it. It's quite clear here. You say quite clear, they say not. You finish your point, but I do hope you'll get back to me. It's just purely a question of law, whether they've been denied or not. It's not a factual issue. There's no doubt that Congress did X, Y, Z there. I urge you to ask Mr. Rapp what facts the Justice Department would like to add about what Congress did. And, in addition, the key thing is for 2808 funds, they can only be spent for certain things for military construction. And, again, there's no disputed facts here about what these funds are being used for. They're building a border wall. That's not military construction. If you're going to remind me what your question was, it was a long time ago. Well, I had been asking about, in contrast to the Thune-Hill, the nature of why this is a distinctly House injury. I don't mean to think it's an exclusion of the Senate, but it's actually an institutional interest that you alone have the House's institutional interest to vindicate, and that that is yours to be vindicated, apart from whether the Senate chooses to vindicate it or not, or whether it really is just, I think as Judge Gentile would say, in a Congress as a whole institutional interest. Unlike what happened in the Thune-Hill here, where the problem was a failure to convince enough legislators to do certain things, here, each House has its own authority over appropriations that, remember, must be passed. That's why the appropriations power is unique. An appropriations statute must be passed. And so this would give, if... Let's be clear when you say that, because non-passage has its own constitutional source. Non-passage... Non-passage of the National Labor Relations Act would not. Correct. Non-passage would mean, for example, we all have to leave. There are no funds to run this board. Government shutdown. I'm sorry? The government shutdown. Exactly. And it could be a government shutdown. As you know, we've had only half shutdowns or quarter shutdowns. What it would mean is, if we're talking about the appropriations clause, it would mean no money for the military, for the FAA, planes would have to stop flying, the court would have to stop operating. Obviously, the judges are constitutionally guaranteed their salaries, but bail if it's at nobody else's. And so everything would shut down. That obviously cannot be. There is then no government. And so that's why this is a situation that is so unique and is not what the court discussed in Bethlehem Hill. But let me come back to the one other point I want to make clear. It would be a very odd way, and I think not appropriate, for the Supreme Court to take a case involving a state system and without mentioning how the federal system works or analyzing it all, the appropriations clause, saying, and the House of Representatives of the United States government can't sue about appropriations. That would just be, I don't think there's any example I can think of where the Supreme Court would operate that way. And in fact, starting to mention, in the Arizona case where the court did examine standing and found there was standing there for a state, the court said, of course, we're not talking about the federal government. That raises different issues, et cetera, unique to the federal government. We're talking about a state. Well, that was implying that it might come out worse. It might, but it also, remember, that was not an appropriations case. It could very well come out completely differently. And there, remember, the court was saying there is standing in that situation, but there might not have been in the federal system. The flip side of that, and the equally valid one is, as you know, states can have all sorts of different systems. I believe, I think there are some states that still have a single legislature. Nebraska. I think it's Nebraska. Right. And so you could have a whole analysis of standing to sue under, I'll take your word for it, Nebraska. I can tell Nebraska if I've got it wrong or if they've changed. We'll make up a state. The state of Utopia. Ames. Ames. Black Acre, et cetera. So you could have those, a state, an analysis of that, which would have absolutely no relevance then to the situation here. The voting system that was at issue in the Third Hill, just as essential to at least legislative governance, and probably governance in our system, as funds. Government of the people, and what that case was about was how do the people vote, making it possible for the people to vote and elect their representatives. That seems pretty foundational as well. It definitely is foundational. Somebody just may, if we don't have representative government. Definitely foundational, Your Honor. There, remember, it was a redistricting case. I'm not minimizing it by any means, as I think your question is pointing to. This is an important issue, but it's about who votes for which representatives. You can have a redistricting system that might or might not be flawed. The Supreme Court, for example, over the years has struck down systems, but you still had elections and you still had a government, and the courts then have to decide, does that government get to continue? My memory is sometimes when the Supreme Court has struck down voting schemes, they've nevertheless left them in place until another election. So you have government. You can't have any, there wouldn't be any of them. There wouldn't be any voting. The government wouldn't be able to spend money to have the electoral college come and gather if there is no appropriation. And so, again, and if I may, this is why we really don't have a floodgates problem. Judge McFadden was concerned about that. This is quite different from merely a disagreement by one house or even both houses without the government, how the executive branch is executing the law. Because the courts have, over the years, in trying to figure out what does Article 3 mean, have been concerned about things like floodgates. Here we have two cases, this one and the House v. Burwell, where Judge Collier found in circumstances extremely similar to this that there was standing, there was a cause of action, that litigation could go forward, as they say, in virtually identical circumstances. We also have- The government says that then if we were to find, there is a floodgates problem because any dispute about appropriations could then be brought to court. And that those disputes happen quite often, where the executive might push the boundaries a little bit to spend and reprogram some funds on a project. Why should we be concerned about that? Because of exactly what I started with. This is a situation where all the political means were exhausted. The President made clear, and remember the President's Chief of Staff said, very tellingly, we will build this wall with or without Congress. I don't think that that is involved at all in any other cases that I can think of except House v. Burwell. The President here- Does that statement really make any difference to your case, the fact that they stated we will build this with or without Congress? Your Honor, I think what it does is it makes clear, it's an explanation for what happened, which is- It's being copied, but as far as the facts and law we're dealing with, that actually is no different than I've got a pen and I've got a phone, which by itself doesn't tell me anything about it. Except that I think it showed, it was indicative of what happened here, which was it wasn't just a dispute. As I say, there was an actual denial by Congress and by both houses, and a government shutdown, and a veto, etc. So I think your Honor definitely has a point, though. What about all of the considerations mentioned in Reins v. Byrd about the court being reticent to get involved in these sorts of disputes, and the lack of a historical record of the courts getting involved in these sorts of disputes, counseling against finding stand- Right, and a very important reasoning by the court. Now remember, Reins v. Byrd and the Supreme Court itself has described it as it involved a case involving individual legislators, not the House itself, so that's a very key point. And yes, we agree completely, you should be reticent. We have no disagreement with that. Reticent means you should be concerned, you should not jump in. But here, as I say, we have this very unusual situation of the political means being exhausted, the President making clear that no matter what you do politically, I will spend this money. And therefore, passing the kind of statute that you asked me about earlier, Chip Wilkins, wouldn't make any difference. I'm going to spend this money to build the wall. So yes, it should be unusual when the courts step into a dispute between the branches, but there certainly is nothing in the text of the Constitution, there's no, they would say, there's no standing here, there's nothing in any Supreme Court case, no Supreme Court case is on point here at all. As I say, the closest case we have seems to me is House v. Burwell, but Coleman, where the Supreme Court found that it was a state, so you've heard me say before, state and federal can be different, but there the Supreme Court said if a vote has been nullified, there is standing, here the votes clearly were nullified, there was nothing more as a practical matter the House could do. It had done everything, it was stuck. So suppose Congress decided to respond to this politically by saying, well, we understand that Article 2 gives you, Mr. President, the authority to appoint ambassadors. We're not going to give you a dime for ambassadors, for their salary, for their support, etc. We're going to kneecap your ability to conduct foreign policy since you've done this to us. He had passed that into law as part of the Appropriations Bill. The President vetoes it. It's passed over his veto. Can the President sue Congress? Can the President sue Congress? I don't believe so. I'm trying to think of what the theory would be. The President would have to be arguing that Congress has to appropriate money, and I'm not sure where that would come from the Constitution. He'd say it's a violation of the Appropriations Clause because to the extent that I have explicit authority and duty expressly enumerated in the Constitution to appoint ambassadors, you are preventing me from executing my express duty that the Framers gave me because you're not giving me any money for ambassadors, and I have a duty written right there in Article 2 to do that. And one problem right off your honor is... We would assume that the merits of that were standing purposes. So can the Executive sue Congress, and can we adjudicate that? No, your honor, because the Framers specifically put into the Constitution a speech or debate clause in unity, so the President cannot sue Congress ever about legislative activities that were put there by the Framers. I guess the President would have standing because of redressability issues, but no. The President would be injured in fact. Would the President be injured in fact? By the merits, I'm assuming he's right on the Constitution. I would have to think more about that, your honor. I'll do that when I sit down. But again, no such suit could be brought. The text of the Constitution makes absolutely clear it can't. Notice there is no speech or debate. There's no such immunity in the Constitution for the President for official acts. And as far as the other problem I think about, another point about floodgates, your honor, is remember we also have an Anti-Deficiency Act that says money can't be spent and can lead to criminal punishment. Now obviously no President here is going to spend money in violation of the Anti-Deficiency Act and be prosecuted by his own Attorney General. So obviously this has limited utility for a case like this, but nevertheless I think it acts as at least some check on Presidents just spending money without any authorization. Your lawsuit isn't against the President, right? Your lawsuit isn't against the President. It's against the agency officials. Correct. Your honor, here our suit is, like in the Steele seizure case, our suit is against the executive branch officers who have been carrying out the President's orders. Well, let me ask you that. Suits against Presidents are a very different animal. As we know, this Court has said that and the Supreme Court said that in Franklin and Mississippi v. Johnson. But again, fortunately, as this Court recognized in the case I handled here, Swan v. Clinton, this Court said there's a problem with suing the President, but you can sue the person who administers the credit union administration. So this Court has found that exactly what we're doing here is perfectly appropriate. All right. Thank you. Thank you very much, Your Honor. May it please the Court. The Supreme Court in Bethune-Hill made clear that a single house of a bicameral legislature, as Judge Suntell pointed out earlier, lacks capacity to assert the interests of the law and for the legislature as a whole. That's precisely what's happening here. The question in Bethune-Hill is what power is being asserted constitutionally here. It's the appropriations power. The text of the Constitution makes clear that appropriations are made by law. That refers us back to the general provisions for lawmaking in Article I that require bicameralism and presentment. That's true. Judge Millett, there's nothing special about the appropriations power in this regard, and the absence of consent stops the executive in its tracks, absent the unusual circumstance in which the executive has some inherent authority. And so just as this Court recognized in Chenoweth where the executive was alleged to have acted in excess of statutory authority when it created the American Heritage Rivers Initiative. In this case, what if there was a law government shutdown? What if we don't have any legislation passed yet, appropriations passed? If during that time the president had said, I'm going to start building my wall. I'm going to take $8 billion. I need to get that. They're not giving me money. I'm taking it out of the Medicare trust fund. Again, the... Could the House sort of stop? Would that be an injury to the House? It still wouldn't be an injury to the House. The Congress. Could House and Senate together sort of stop that? We don't think so. But, again, that's far removed from... I'm just trying to understand your position. So I get that it's not this case. Lay that on the table. Okay. So the government's position is that if the president, and this is hypothetical to be crystal clear, said I'm taking $8 billion out of the Medicare trust fund to build a wall or do whatever else some president wanted to do because Congress is authorizing nothing. Nobody can stop him? What we do think is that would present... To be clear, Senator, did you stop him? Can Congress, House, and Senate together suit? No. We don't think that in light of the core reasoning of brains versus bird, that these kinds of interbranch disputes belong in federal court. But let me make it clear... There are some powers cases all the time between executives and the legislature. Yes, but they're brought by private entities. Yeah, but when private entities brought this same type of litigation, you said they can't do it because the appropriations clause and the relevant statutes here run to Congress. The particular folks who have brought suit to date have not been the type that might be able to properly... Who might be able to bring this lawsuit? For example, individuals who would have directly received the funds transferred, but for the transfer... How does anybody... Money is fungible. Nobody is going to be able to show that these dollars would have come to me. No, they would. If there have been projects that have been set out that are being taken away from, for example, which involves the transfer of funds that were otherwise going to be used by the Department of Defense... For military, so military personnel can bring these lawsuits? I don't think so. Perhaps a contractor who had been receiving these funds. But again, that's not what we have to date in terms of the individuals who have been brought suit. And not everybody... I don't understand. So then, if it's the wrong people bringing suit, then... I guess I don't understand why, if courts are allowed to adjudicate that the president cannot spend that money in the absence of an authorization from Congress, and we can do it if a contractor brings suit, why can't we do that if Congress? I mean, we could put aside the one-house, two-house issue if Congress brings suit. Because as... It's much of a separation of powers issue there. Well, because of the thrust of Reins' reasoning when it recited in three pages of its opinion the history, the absence of any history of these kinds of interbranch disputes... Is there any history of a president, in my hypothetical, a president doing what I hypothesized? No, and there's no history of that happening here. With regard to here, in this very context, as we point out on page 27 of our brief, Congress did enact some express prohibitions on the use of funds to build border fencing in particular areas, particular wildlife refuges, parks, and... But isn't there any real difference between an express prohibition and simply a non-appropriation? Yes, there is, and that's exactly what happened in... Well, because what we have here are express statutes that authorize us to make the transfers that we've engaged in, the separate provisions... We're at a standing stage, so I think... I get that there are... And to be clear, I get that there are serious arguments here, but I think right now we have to assume you're wrong on the merits. None of those authorize this. Then can you answer Judge Lindahl's question?  The court made clear that we'd simply be in a situation where there are allegations that the executive branch acted in excess of statutory authority, and as the court made clear... No, in excess of constitutional authority, I think was... Similarly... Right. Similarly, in Campbell, there was a war clause violation, and again, the court... That wasn't included by a branch of Congress, a chamber of Congress. Right. That was a suit by individual congressmen. The logic of the court's reasoning and the touchstone was the availability of political self-help remedies. A single house is even better situated than individual congressmen to avail itself of those political self-help remedies of the kind that Judge Wolkin... Congress did what you all say, and they passed another bill that was explicit as could be. Zero dollars for this project. Zero. Under any statute of the United States. Not a penny will be spent if there's any law that could even plausibly be construed to support it. It is hereby amended to forbid it. They both pass it. The president vetoes it. Both chambers override the veto, and the president does it anyhow. What happens then? Again, would that happen here? We've complied with express... To be clear, let me start again. This is a hypothetical question to test your legal rule that you're proposing. We don't think that those kinds of inter-branch disputes get resolved. How do they get resolved then? They get resolved through the political process. They can't. Under my hypothetical, Congress has done, has wielded every weapon that it has. Congress has other remedies as well of the kind that Judge Wolkin was identifying. What other remedy? They could say, we're funding nothing, and he would go, I'm taking the money out of Medicare. Any part of the government, they can focus on legislation, on other matters. What does the appropriations clause say that the president can spend whatever he wants unless the legislature closes the entire government? Again, just to be clear, that is not happening here. But the question is where it goes. If you say nothing can stop. That's why you've got to grapple with these questions is where does the theory lead? Your theory that courts have to sit by once everything has been exhausted, and even under my hypothetical assuming that it is Congress as an entity, a united entity that is filing the lawsuit. Well, again, it's private interest. How are courts supposed to say what the law is in that circumstance? Well, take a cue from Justice Souter's concurring opinion in Reign, which focuses on how far removed from the conceptual core of the common law core of the case or controversy limitation interbranch disputes involving allegations of injury to official power is. Those kinds of disputes historically have not been. Again, that wasn't a majority opinion. No, but that's simply building on the majority representation of A, the logic. That was members, not a House. So it seems to me I would have a hard time explaining to maybe any non-super expert lawyer why that's not a case or controversy. Well, the court, of course, need not resolve that issue in this context. I don't think I ever heard you answer, Judge Melissa, original hypothetical. If you had that circumstance where you had the passage, the refactoring, the veto, and the President went ahead anyway, would Congress or would it not? All Congress together, would it or would it not? I want a yes or no answer to that. Would it or would it not have standing? We don't think that it would have standing because it would fall outside what is traditionally thought to be amenable to judicial resolution. That's when the majority opinion reigns. So we think that the logic of the rest of the range of opinions... Then why would someone who was going to, would have received the funds, who could prove that they would have received the funds, but they didn't because of the reprogramming that took place here, then why would that person have standing? It's still the same inner branch dispute. Because that is the traditional kind of case that gets brought when there are separation of powers disputes. That's the Zivotofsky type of situation. But the consequences of the court's ruling are exactly the same. But that's the thrust. You could have said the same thing with regard to... It would have been more honest just to have the two branches that are fighting here than to have to wander it through a military contractor. But that's not the way the court in reign said it worked. Why? Reigns is instructive. Why? Indeed, the reigns foreclosed resorts... Reigns did not involve Congress doing it. Right, but it is... And it did not involve exhaustion of every remedy. In fact, that was the sort of core leadership. Well, look, again, you can reserve the question of whether... I'm not sure I can reserve any of these questions. If your position, your bottom line is Congress as a whole, would love a house, never has standing to enforce its rights under the separation of powers. Again, we... Or you'd have to sit back and watch the separation of powers between the two branches collapse and say, nothing we can do about it. I guess, Congress, you have to try and shut everything down, but the president will just ignore that and keep going and tell his treasury to keep printing money. And, again, that... And a hypothetical. Again, it's a purely hypothetical because it's far removed from what's happening here. But not from your legal position. But our legal position... Not from your legal position. But it's not... But our legal position doesn't... I mean, that's another step in the legal position. I'm sorry, I thought you were going to say, how is that a development of your legal position? I thought your legal position... Because you could follow... Because Coleman or Campbell and Chenoweth talked about exhausting your political self-help. So... Okay, we thought political self-help had been exhausted here. That has not been exhausted. Well, it was... What else am I... No, you go ahead. Same question. They could enact an express prohibition. The Appropriations Act, that is ceding power to the president because the Appropriations Act does not say that he can spend anything that's not prohibited. And that's what you would be saying, is that the separation of powers that we thought was important... I'm sorry, I'm going to finish too late. I don't know if you can tell me, because I want to understand why your position doesn't leave me here. If I were to understand the Appropriations Clause as saying, you have to have specific authorization. Or, sorry, you don't... You need... You, president, need to find affirmative authorization. Inaction alone ties your hands. And for us to say what you have to do to have a constitutional injury is affirmatively prohibit. And that's to change the Appropriations Clause. It becomes the president may spend all money, may draw money from the treasury unless expressly prohibited by a supermajority of both houses of Congress. But that's exactly what... That's a different Appropriations Clause. Will you give me that? But again... Will you give me that? That that's a different Appropriations Clause? No different, though, from the... I mean, no. I'll give you that. The president needs an appropriations statute to spend money. The president and the executive branch also generally, unless there's some inherent authority on the part of the executive branch in the particular area at issue, needs a statute to authorize his action. And that's why the court in Campbell made clear that the political self-help... No, it's quite the same thing. Because, as we know from the seal seizure case, when it comes to legislation and things other than funding, inaction by Congress creates a gray area where the president may or may not be able to act. But not so for the Appropriations Clause. Inaction is a bright line, a wall against presidential spending. Well, here, of course, we have express statutory provisions, and as to 8005, the GAO, Congress's own arm, an expert in appropriations, has made clear... You know how standing works. So let's just assume, since we have to assume you lose under those statutes, and that's a very big assumption for some of the reasons I voiced earlier. But for now, we have to assume they don't exist. I think your standing position will be exactly the same as those statutes did not exist. And during the shutdown, the president did exactly what's happening here, sort of taking money from other agencies. But again, silence of denial with respect to any time... It's not. I mean, that's my whole point, is that it's not in our constitutional structure. With the same... There's a reason the Appropriations Clause is there. It has this distinct constitutional function that says inaction. But again... No. But again... In a way that inaction on other things creates a gray area where the president may or may not. Sometimes yes, sometimes no. I mean, we respectfully disagree. Also important to note, your invocation... The executive branch doesn't agree? The president can sometimes act in the gray area? No, we agree that the president needs an appropriation to act. An affirmative appropriation? An affirmative appropriation, which we have here. And moreover... Whoa, whoa. You have an affirmative appropriation here? Yeah, we have authorities under 805 and 2808 to use Department of Defense funds to support construction of a border wall. That's the merits issue. Their argument is that... But their argument is simply that we haven't complied with these provisions. I guess for my purposes, I can only speak for myself, it's not... What more needs to be done about these statutes? But in answering questions, it is just not helpful to say, we think, in fact, we have a statutory authorization because their Appropriations Act claims, right or wrong, where we assume they're right at this stage, assume that you cannot use those other statutes. I'm not saying they're right or wrong on that, or you're right or wrong, but at this really early stage on this very narrow question, we have to assume those are out of the question. So it's not right to say you have an appropriation just for this purpose, just for this purpose. Right, but at most, what we have, assuming the validity at the standing stage of their claims, at most, what we have is a claim that the executive branch has acted in excess of statutory authority. That under Campbell, in Campbell versus Clinton, the court made clear that that's not the kind of dispute that can form the basis for action by an arbitrator. But the Supreme Court has said in INS v. Chadha, and we've said in Noel Canning, that when it comes to structural protections that are, you know, the bedrock foundational parts of the Constitution to, you know, preserve liberty by preventing the aggrandizement of power by any one branch, that those can't be waived. You know, that the executive can't waive a violation of the, you know, presentment clause, you know, the Supreme Court said in INS v. Chadha. We said in Noel Canning that, you know, Congress, neither Congress nor the executive can agree to waive structural protections. You would agree with me that the Appropriations Clause is a structural protection, wouldn't you? Yes. So if that's... Yeah, go ahead. Yes, is your answer? So given the way that we in the Supreme Court look at those, how can you then say, well, we just have to look at the language of reigns and say you can't get involved in this inter-branch fight, even if it means that if you take the allegations to be true, of course, which we have to hypothetically for standing purposes, it means that a structural protection of the Constitution will be eroded. Because the times in which historically the Supreme Court and this Court have engaged in review of these structural aspects of the Constitution have been in private suits, like Vivotofsky, like INS v. Chadha, like Youngstown. So why is it more appropriate to do it in a private suit than when Congress brings the suit? Because, as the Court of Reigns made clear, you could have a model, as some European constitutional systems have, where the legislative branch comes to court. That's not, as the Court made clear in Reigns, the model our constitutional system has adopted. Did Reigns say if Congress itself had been suing there, it was answering that question? It did not, Your Honor. But the logic of much of it... Reigns said that the injury was Congress's as an institution, not these individual members. It did not say... So that logic of Reigns doesn't follow from that holding. Well, much of it... That they were saying that even if the institution that was injured was before us, you couldn't bring the suit. It would only be some one private individual. It did have the reservation at the end of Reigns that this was not a suit involving either of both branches, So we humble lower courts kind of have to take that seriously. Well, with respect, you also have to take very seriously, as this Court has recognized, not only considered reasoning of the Court, even if it's over to DICTA, which it's not here. It's formed an important thrust of the Court's reasoning. And much of the Court's reasoning focused on... Reigns, didn't the Houses of both actually oppose the litigation? They did. That's a whole different problem than it is. They did. But again, the thrust of the parts of Reigns that I'm mentioning apply equally to actions certainly by one House. So suppose what happened is the facts were that there's a shutdown of the government in light year, but there is, basically, the allegation is that there is a bargain that struck between one chamber or the other with the executive, where they say, we know that you want to spend this money on X, the wall, whatever. We know that there's a limitation in the appropriations bill preventing you from doing that. Just go ahead and spend the money. We won't join any lawsuit. The other chamber can't bring the lawsuit by themselves. They need the whole Congress. So we, the Senate, will stand down. We know what you're going to do. You know, wink, wink, nod, nod. Nobody would have standing there either. Well, we think, we don't think the Coleman exception applies in the federal context, and the court has been careful to reserve that question. It's noted, including the Arizona legislature case, the important separation of powers questions would be presented. But that, at least, would present a closer question about whether you had some sort of Coleman problem. Now, here, there wouldn't be a Coleman problem in any event. Can you finish your answer to that question? So now you say that would look like a Coleman problem, which we don't think applies in the federal system. So what is your answer to that question? Could the House sue in that context? In the end, we don't think so, but this court might have a different view about the scope of the issue. Well, but you would think it's wrong. We're trying to find out what your position is. Again, at bottom, we do not think that interbranch suits of these kinds are wrong. Let's pretend, so back to my hypothetical about taking the money out of the Medicare trust fund and there's an override of a veto, and the president keeps doing it anyhow. And then let's imagine that you all succeed in your argument, saying private parties can't sue either. Then can the court step in? Or do we just all sit back and nod while the Constitution, the separation of power reorders? Well, of course, the fact that no one may have standing doesn't mean that we're going to stand. But we would say in that context, in order for that raid of the Medicare trust fund to take place, there'd be serious anti-deficiency problems. Anti-deficiency problems that would require action all the way up and down the chain in the executive branch. It's fanciful to think that that would ever occur. If it did occur, we're in a lot bigger problems than... We're already in the world where the president's ignoring the override of a veto in my hypothetical, so I'm not sure. So your answer is the court still can't do anything. Again, we do not think that our constitutional system today has countenance and should countenance interbranch disputes. To be clear, it has not happened yet. But that's not because people brought suits and courts said no. It's because it hasn't happened yet. And that's what... Where the president has, again, assuming, for standing purposes, assuming that there aren't those arguments about other authorizations. So assuming we're in the world where there's clearly no authorization. A point made in Justice Stevens and Justice Breyer's separate opinion reigns in the majority. It's not about whether Congress could sue. The reasoning and the examples that it was referencing, including the noted absence, as it pointed out, that Congress never sued to challenge President Coolidge's pocket veto. The court referred to Congress. But in any event, to take a step back to where we are in this case and how it fits in with platoon hell, this is a single house seeking to vindicate interest that the terms of the Constitution belong to Congress as a whole. That's the appropriation. I guess I'm not giving Judge Wilkins hypothetical. I'm not sure. That's right. Imagine to make it even more extreme. The Senate, we're in a shutdown. The Senate says this is ridiculous. We're passing a law that says, President, you may spend this money to make it hypothetical, we shall say, to build new governmental buildings in the state. Take this money and do it. And the President says, fantastic, I'm signing that, and I'm spending it. Is the House injured because it's been completely cut out of the appropriations process? We think the House may very well have an injury there. An injury in fact. But whether it would be legally cognizable, again, that raises questions about Coleman. So I thought the way this case, you all said the only issue was injury in fact. And that's clearly an injury in fact. Well, but as the court in Reins pointed out, you've also looked to inform the injury in that prong, whether something is traditionally legally cognizable. I don't understand where that's coming from, to be legally cognizable. No President ever did this before. Of course there's never been litigation like this before. I don't see why that sets any ice at all. Look, that could very well be where this court ultimately comes down, if that fanciful situation occurs. Before the court comes down anywhere, you keep saying, well, there hasn't been a lawsuit like this before. There hasn't been a fact situation like this before. Right. Why does that make any difference? Because that's the touchstone of what the court emphasized in Reins. But again, I never touched that stone. But again, in Bethune Hill, this court, the Supreme Court made clear, the question is, what is the power that's being asserted? You have to come back to Bethune Hill. You have to keep claiming. I'm not saying it's a falsehood. You have to keep claiming that a unicameral action can't happen in a bicameral house. That's right. That they don't have standing by themselves. That's right. And then also we're saying that... Even if one of the chambers has turned the legislature into a unicameral. Which has not. In my hypothetical, only in my hypothetical. Which has not happened here, Your Honor. Well, that would be, if you say the Senate has to sue as well, then the Senate's in action. You say if the whole House of Congress has to sue, then Senate in action would, for all intents and purposes, turn it into unicameral. But the same... Just in that narrow sense. But again, under this court's decision in Chenoweth, which, by the way, also had spending clause overtones, it included a claim that Congress was violating... Was that a House of Congress suing? A Chamber of Congress suing? No, but the logic was, again, the reasoning of the court's opinion was focusing on what self-help was available to Congress. But the major self-help that Congress has available, the one that's most persuasive about youth political power, is appropriation. The power of the first. And in this case, the power of the first has been nullified. So doesn't that make this a little different case? No, because that's what they argued as well there. You seem to like to talk all the judges are talking. Sorry, Your Honor. Isn't that different than any case that's ever come up before? We don't think so. Under Chenoweth, in Chenoweth, the court, if you look at the plaintiff's opening brief, beginning of page 12, they focus on the absence of appropriations here, and then the creation of dis-American heritage. Is that the brief or the opinion? The brief, but the opinion makes reference to the fact that there was a claim under the Anti-Deficiency Act and the Spending Clause. And that's essentially what they're spending... And that was a members of Congress suit again, right? Correct. But again, the court's reasoning was turning on... I think, and I'm sorry, because I know I've been talking too much, so it's partly my fault. But it seems to me here, you really have to grapple with the fact that there was the political battle that we say, look, you guys try and sort this out. That happened. And legislation was passed. Compromise was breached. And then taking... Tweet there, I'm taking the facts from the complaint that's asserted here, because we're at the standing stage. And then the president said, I reject that. I'm going to go ahead and spend it anyhow. Putting aside your marriage issues, I have to pretend they're not here right now. I'm going to go ahead and spend it anyhow. And then there was a joint resolution, and that was vetoed. And so they've done... We've had no case where there's been that much action. And a chamber of Congress itself, not members, has filed suits. And as Judge Santel pointed out, we're talking about the appropriations power, which is supposed to be their most potent weapon. And if we say it can be ignored, and there's nothing anyone can do about it, well, it seems to be just a pretty dramatic... to cross, and I feel like I need a little more comfort than pointing to cases that just didn't seem anything like that. Well, point to taking their allegations as they make them, that DHS was appropriated only a limited amount of money for border fencing. The GAO itself, in the opinion that they reference on page 45 of their brief, makes note that under established appropriations law principles, it's not the case that simply having appropriated less amount to one agency takes away pre-existing authority to DOD that exists under Section 805. So I don't know if you want us for standing purpose to take judicial notice of the GAO, because everybody fights about that organization depending on which way it comes down. I don't think we can do that. Well, I think that this is just a basic background principle of appropriation law. This is, as Judge Wilkins said, not a situation where the political remedies have been exhausted, where, as I was mentioning earlier, Congress has, in this very context, made express limitations on the use of funds for border fencing. Those have been honored. What we have here is a good-faith dispute about the scope and meaning of an appropriations provision. But that's no different from the scope and meaning of any statute. The House can't come in and invoke this Court's power to say, this is how we want the law that we enacted to be interpreted. But you're standing position... So Judge Millett asked you a hypothetical earlier where there's no appropriation at all, and the President just takes the money from the Medicare Trust Fund and uses it for the project. That's not a suit about the scope of any statute. Right. You say that the result that would obtain would be the same in that lawsuit, right? This Court might differ. We think that, again, that Congress still has tools against the executive branch and that it wasn't intended by the framers to invoke the power of the Article III courts to get enmeshed in those kinds of political disputes. But this Court might differ because that is a much different situation from what we have here. Here, we have just a good-faith dispute about the meaning of existing provisions. There's no dispute here that the executive branch can act without appropriations authority. We have. Is there any dispute that the spending restriction or limitation on the border wall was at the instigation and insistence of the House? Could you repeat the question? Sorry. Is there any dispute that it's the House that was the cause of the action for the spending restrictions such as they exist on border wall construction? The ones that were enacted? Yes. I'm not sure about that, actually, Your Honor. The origination of those provisions, those are provisions that limit border fencing construction in particular wildlife refuges and the National Butterfly Center and certain other areas, but I'm not sure what was the impetus and what the history of those provisions were. Maybe I'm not asking my question very well, but there's the whatever it was, $1.375 billion whatever restriction. That was the House's restriction. That was basically at the urging of the House that that number was right, right? That may be. I'm not entirely sure, so I don't want to say with specificity. There's a good certainty. But we don't think that that changes the calculus in terms of what their institutional harm might be under Bethune Hill, and in any event, they continue to have, as you were mentioning earlier, the authority to enact the kind of express prohibitions that they've enacted in the context of the provisions that I was alluding to. Well, let's make sure we understand what you're saying here. So to the extent that if we believe that Congress, just by the operation of a simple majority vote and the president signing that into law, can take a certain action, but that if the theory of this lawsuit is that the president then just kind of ignores the words in the statute, and then the political remedy is to pass another law, but you have to pass it with a veto-proof majority, then haven't you put Congress in a position where its vote has been, if not nullified, weakened because the steps, the law that they passed, that they were only required to pass with a majority vote, in order for that law to take effect, they now have to pass a second law with a veto-proof majority, and so you have, in effect, weakened their power. And that's precisely what this court in Campbell and Chenoweth made clear does not amount to a cognizable injury. In fact, the political self-help remedies that were adverted to in Campbell and in Chenoweth both involved the need for Congress to enact legislation either to... Not to enact legislation with a veto-proof majority. Potentially, because I would be surprised if President Clinton and Campbell would have signed into law the kind of statutory provisions that the court in Campbell said were necessary for the Congress. But I guess my hypothetical assumes, for the sake of the question and the argument, that you're passing the same thing a second time. You only had to pass it with a majority vote the first time because you kind of had the gun at the head of... Everybody had a gun at each other's head because it was a government shutdown situation. But then you were forced to pass the equivalent of the same legislation a second time when you don't have that leverage. I think in Chenoweth and Campbell and those situations where they're talking about well, you can have political self-help... The presumption is that you didn't specifically speak to this this first time, right? No, I don't think that's right. In Campbell, the court noted that the legislators there had been successful in defeating an authorization of President Clinton's bombing in Yugoslavia. And they were going to have to... That wasn't enough. Their votes weren't nullified within the meaning of Coleman, even assuming that Coleman applies in the federal context. And as the Supreme Court makes clear, since that on in Bethune-Hill, that Coleman refers to the limited circumstance and also in Campbell referred to this as well, where there's some dispute about a legislative team's pull or the validity of a counted or uncounted vote. That's exactly... I don't think it's the same because there was no legislation passed that was defeated. So the assumption is that the defeat meant that the president had authorization to take the action. No, well, the defeat meant that their view that the War Powers Resolution was being violated and the president didn't have authority to undertake the military strikes. And they filed suit and they said, give effect to that vote. And this court in Campbell said, no, we're not. Well, I guess what I'm trying to make clear is that by political self-help, we certainly couldn't have meant that if Congress speaks once, they have to say it a second time and say, well, I really meant it this time. Well, we think, again, that's essentially what was going on in Campbell with regard to the need to pass, potentially with veto-proof majorities, the kind of legislation that the plaintiffs thought that they had succeeded in thinking they didn't have to pass at all. Now here... There, to be clear, we're in the gray area there. That case involved legislation, not appropriations. The president, on his hand, had expressed constitutional authorization to conduct foreign policy and commander-in-chief. And Congress had its authority, but you were in that gray area. But here, with appropriations, I thought you said earlier on, you agreed that absent express authorization to spend money, the president's not in a gray zone. The president can't spend it. He needs to point to an express authorization. Is that correct? Yes. Correct, but just as in the appropriations context, which just refers to the general lawmaking power, refers to making appropriations by law, so, too, in the Chenoweth case, where you've got... No, because the president had... We're not in a... Unless... Does the president assert an inherent constitutional authority to spend money building border walls without funding from Congress, or does the president agree that there has to be express funding from Congress? It does, and that's why we've invoked the authority... Sorry, just to be clear, it does. The president agrees there has to be express funding. Yeah, and that's why we've invoked the authorities that we have under these offices. But just to make clear about Chenoweth, if I may, there, there wasn't any apparent inherent authority on the part of the executive branch, and the plaintiffs were arguing, hey, you're spending money on this American Heritage Rivers initiative without complying with the appropriations power and the spending power and our prerogatives, and the Supreme Court said no, or this court, I'm sorry, said no, in light of Raines and our lawmakers and our pre-Raines cases. I'm sorry to respond to your War Powers case, but yes, that was in the house. Can I ask you something? I know we've kept you up a long time. On this, the president needs, agrees, needs express authorization to spend money, and you have your arguments on why you have that here. What happens, what does the president do if it's something genuinely, in a world where the Constitution requires express authorization, if something's genuinely ambiguous? Congress just passes. We see these sometimes. Sorry, but Congress passes things, and we're like, oh my gosh. It's genuinely ambiguous. Does the president say, I need express authorization? I have no idea what they did here, so I can't do it? Not sure, but I know that there are all sorts of inter-branch accommodation processes and regular discussions. Does the president claim the power to resolve ambiguities in favor of spending, which would seem to be quite inconsistent with the agreement you need in the Constitution? That hasn't come up in this case, and I'm not aware of that. Can I just make sure I understand your political remedies argument? So let's suppose that the appropriations law said you can only spend $1 billion for a border wall from the X account. That's very specific. And then the allegation is that the president said, I don't care about that. Take $2 billion from the X account and use it for the wall. And Congress sues. Is it your position that they have a political remedy because they could go back and pass a law that says you cannot spend more than $1 billion from the X account? That's one thing, but they also, as you were alluding to earlier, Your Honor, they have all sorts of leverage over the executive branch with respect to initiatives and legislation that the executive favors. They can refuse to take action on that. They can as well pass legislation even in unrelated areas affecting, as you were saying, appropriations. But just so that I'm clear, your position is that the political remedy, one of the political remedies that they should do is to pass the law a second time, the exact same law? I mean, if it really is the exact same thing, I'm not sure that that's the remedy, but I'm not sure that that was exactly what you're hypothesizing. It certainly isn't what we have here, Your Honor. What we have here is a good faith disagreement about the scope of separate statutory provisions that we think take this case. So if their political remedy is to say we're not going to fund any ambassadors and basically we're going to not enable you to conduct foreign policy, the president wouldn't have a cognizable injury for us to recognize if the president decided to bring judicial relief. We don't think, similar to part of the history that invoked by race, we don't think that kind of inter-branch dispute is the kind that traditionally has been thought amenable to resolution by Article III courts, and that's why the Supreme Court referenced the decades-long disputes involving multiple presidents over the Tenure in Office Act. There were serious concerns about that, but it was only resolved in private litigation much, much later, not through suits brought by a president, be it Grant or Wilson or any in between, Cleveland. It was openly resolved in the suit involving a postmaster who was removed from office. Can I just, one more, I think it looks like colleagues have one more question to follow up on that merits issue that I've been trying to shove to the side for purposes of the standing argument and their argument that everything we need is here in front of us, and you all, one, we don't really have, I assume you have more comprehensive briefing. You didn't want to brief it here. Am I wrong to think that at least there might be needed some more record development, too, on exactly what's going on with these expenditures? No, you're right about that. First of all, the 2808 issue was never briefed at all in district court. The projects weren't approved until after the district court rendered its decision, and look, we think that with regard to 2808, the military necessity aspect of the analysis is amply met and wouldn't be appropriately lightly second-guessed in terms of a judgment like that, but obviously if the court were inclined to disagree, we'd want a record created so that review could be had if necessary, and similarly with regard to the 8005 issue, the foreseen question with which the GAO agrees with us on, but if a court were to be less open to that, as a legal matter, we'd like the opportunity to potentially pass the record. Thank you. We've kept you up a very long time. Sorry about that. It's been very helpful. Thank you. Great. Is this your letterhead? We'll give you five minutes just because we've kept them up here so long. Thank you, Your Honor, for your patience. First of all, the Chenoweth-Campbell and the Harrington case from the Fourth Circuit, as I know Your Honors know, but I'll remind you, those all involve individual members, so those clearly do bring the floodgates problem. Second, as Mr. Rapp said, the Justice Department position is under no circumstances may Congress, the House, the Senate, et cetera, litigate against the executive branch. This Court's precedent is directly on point against that. The AT&T subpoena case says that that is wrong, so you would not be permitted to accept their argument unless you went in bank. Several of you asked questions about, so I think that I can say why. This is the key part of the question. Remember that none of this is in the text of the Constitution. The only thing in the text of the Constitution that's relevant are the Speech or Debate Clause, the Appropriations Clause. So the question is, why would the framers, in designing Article III and setting up what the power of the courts is, we know Marbury v. Madison, the power of the courts is to say what the law is, why would the framers have thought the only way this kind of dispute can be resolved is if there happens to be a private party or shutting down the government and doing things that are harmful and dangerous to our nation, enormously harmful for our economy, dangerous for our citizens, et cetera. Why would the framers have wanted that, especially because, as Mr. Rabb and you all have noted, the courts all the time issue decisions about separation of powers, Zivotofsky, Chadha, et cetera. So why is it that the framers, why should you interpret Article III in this way when there's nothing in the Constitution, nothing in the debates by the framers that would lead you to that? To me, that is the absolute essence of this case. Judge Wilkins, you asked about some of the technical details of the funding, who was proposed what. It's described at pages 5 through 9 of our opening brief, the whole way that went. I know that the Justice Department is very fond of Justice Souter's concurring opinion in the Raines case. I did just want to note one thing. Justice Souter, footnote 1, referring to an argument made by the Solicitor General for the Justice Department, said, as appellants note, it is also possible that the impairment of certain official powers may support standing for Congress, or one house thereof, to seek the aid of the federal judiciary. That is just a concurring opinion, but I'm assuming that the Justice Department continues to embrace that view. And the last point is, Judge Millett, your, I think, last question to my friend, Mr. Rabb, about factual development. I have to say I'm fascinated to hear him say that, yes, we need some factual development, because if you agree with us and reverse here and remand for proceedings before Judge McFadden, we don't think there will be any factual development that would be relevant, but I have to tell you that the House would welcome the ability to take depositions of the President and the Secretary of Defense and the Secretary of DHS, etc., on factual developments. So you might welcome it, but you know those things are hard to get. I'm sorry? You might welcome it, but those things are hard to get. Yes, exactly, because... That doesn't mean, the one doesn't mean there are other ways of developing a record on exactly what money is being spent on. Right, but there is no factual dispute. These are all, in the California litigation, this has all been resolved. Well, I don't have enough of a record to feel comfortable on. For what it's worth, I cannot speak to my colleagues about what's going on. We can submit... I'm sorry. Go ahead. We can submit the declarations, and the government has submitted, the Justice Department submitted declarations here. All of these are facts about which there is no dispute. Nobody's disputing, well, are they actually building a wall or not building a wall? Does this court have expertise in fact finding? It has expertise? Expertise in fact finding? No. Does this court have expertise in fact finding? They do, and again... Mason? Point taken, Your Honor. 2008. Correct. I can't remember all my numbers right, but one of the statutes that had two and eight in it. It wasn't even litigated in the district court. Was that correct? It was not, because it's in our complaint, and we did mention it, but at the time, the executive branch had not moved the money. Now they have moved the money, and all of this is now well known. In fact, they've made reports. They've said, we're funding the following projects. I should ask Mr. Rabb, and I'll just ask you then, are there not other threshold issues that might also be raised in district court before we even get into this? Or is this the only one? Cause of action? I believe we would now be set, if this court held that the case is justiciable, I think we would... We're not justiciable. We're only holding standing. There can be other arguments. Well, they've not attempted to defend on a lack of cause of action. Maybe they're not going to, but just to be clear, that's another concern about courts of appeals jumping the gun. Right. But again, point taken. They haven't filed an answer in district court, have they? They filed a motion to dismiss. So there's no answer yet. I think that is correct. Thank you very much. Thank you. I appreciate the very helpful arguments and the time counsel gave us. The case is committed. Thank you.
judges: Millett, Wilkins, Sentelle